**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>            Plaintiff,<br><br>v.<br><br>Justin David Limon,<br><br>           Defendant. | No. CR-22-02776-001-TUC-JGZ (EJM)<br><br>**ORDER** |

Pending before the Court is a Report and Recommendation ("R&R") (Doc. 60) issued by United States Magistrate Judge Eric Markovich recommending the Court deny Defendant's Motion to Suppress Defendant's Statements (Doc. 37). Defendant filed an Objection (Doc. 66), and the Government filed a response (Doc. 68). For the following reasons, the Court will overrule the Defendant's Objection, accept the Magistrate Judge's R&R, and deny the Defendant's Motion to Suppress.

**I.    STANDARD OF REVIEW**

When reviewing a magistrate judge's R&R, this Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). "[T]he district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (emphasis in original). District courts are not required to conduct "any review at all . . . of any issue that

is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985). *See also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

## II. FACTUAL AND PROCEDURAL HISTORY

The R&R details the factual and procedural history of this case. (Doc. 60 at 6–16.) Because neither party objects to this portion of the R&R, the Court will adopt it in its entirety. For the purposes of this Order, the Court briefly summarizes the relevant history.

On December 1, 2022 Defendant Justin Limon was arrested at a Border Patrol Checkpoint near Amado, Arizona after an immigration inspection revealed 4.42 kilograms of methamphetamine in his luggage. (*Id.* at 2–3.) Limon was questioned by Border Patrol Agent Vanessa Salcedo during the initial inspection (*Id.* at 6–7) and by TPD Detective Verdugo while he was detained on suspicion of drug trafficking (*Id.* at 9–15). Limon was subsequently charged with Conspiracy to Possess with Intent to Distribute Methamphetamine in violation of 18 U.S.C. § 846 and Possession with Intent to Distribute Methamphetamine in violation of 18 U.S.C. § 841(a)(1) & (b)(1)(A)(viii). (Doc. 13 at 1–2.)

In his pending Motion to Suppress, Limon argues that his *Miranda* waiver and his post-*Miranda* statements were not voluntarily-made because he was under the influence of drugs and "dopesick"[1] at the time of questioning, and was coerced by officers into making incriminating statements. (Doc. 37 at 3–4.) An evidentiary hearing was held before Judge Markovich on the Motion to Suppress, during which Agent Salcedo and Detective Verdugo testified. (Doc. 60 at 4.) Following the hearing, Judge Markovich issued an R&R recommending that the Court deny Limon's Motion to Suppress. (*Id.*)

Limon filed an Objection to the Magistrate Judge's findings and recommendation.

---

[1] When asked to explain his reference to Defendant as being "dopesick," Detective Verdugo testified that he uses the term "dopesick" to refer to the cold-like symptoms experienced by someone who is withdrawing from opiates. (Doc. 60 at 15–16.) In his Objection, counsel for Defendant asserts that "Mr. Limon was clearly under the influence of some type of drug." (Doc. 66 at 1, 3.) Regardless of whether Defendant was under the influence of, or withdrawing from drugs, the Court must evaluate the voluntariness of his statements. Relevant to that point, testimony at the hearing established that Defendant had not used drugs for five hours. (Doc. 60 at 10.) And Defendant stated that he smokes so much, it doesn't really do anything for him anymore. (*Id.* at 13.)

(Doc. 66 at 1.) Limon appears to make three arguments[2] in support of his claim that his statements were not voluntarily made: (1) his statements were not voluntary because he was under the influence of drugs at the time of questioning; (2) he was coerced by law enforcement into making incriminating statements; and (3) the Magistrate Judge applied the incorrect standard in determining whether his statements were voluntary. (Doc. 66 at 2–4.)

**III.   DISCUSSION**

*A. Limon's statements were voluntary even if he was "dopesick" or under the influence of drugs*

In his Objection, Limon asserts that his statements were involuntary because he was under the influence of drugs and his withdrawal symptoms left him confused and prevented him from answering questions coherently. (Doc. 60.) The Court agrees with the Magistrate Judge's conclusion that despite being influenced by drugs or drug withdrawal, Limon showed he had the ability to think rationally and exercise his free will.

To be admissible, a defendant's statement must have been made voluntarily. *Miranda v. Arizona*, 384 U.S. 436, 462 (1966). "A voluntary statement is one that is the product of rational intellect and free will." *United States v. Kelley*, 953 F.2d 562, 564 (9th Cir. 1992). A person's intoxication or drug use does not necessarily render a statement involuntary. *Id.* at 565. Indeed, the Ninth Circuit has consistently held that a statement can be voluntary even if the defendant is intoxicated or withdrawing from drugs if the statement is nonetheless the product of rational intellect and free will. *See id.* at 565–67 (affirming the trial court's denial of the defendant's motion to suppress statements based on

---

[2] Like the Magistrate Judge, the Court finds Limon's motion to suppress and objection vague. (*See* Doc 60 at 16.) The Court has read through the Objection and identified what appear to be Limon's Objections. Although in the Objection, Limon states, "[w]hile Mr. Limon was eventually mirandized, the Detective asked a number of questions prior to the formal interview," (Doc. 66 at 3.), the Court concludes that Limon is not challenging the voluntariness of his pre-*Miranda* statements. Limon did not object to the Magistrate Judge's conclusion that the parties had effectively resolved this issue by stipulation, and that the parties agreed to exclude Limon's pre-*Miranda* statements pertaining to Limon's prior incarceration, financial situation, and former homelessness. (Doc. 60 at 11 n.2.) The R&R notes that defense counsel requested that the conversation about Limon's drug use be admitted to show he was "dopesick" from recent drug use. (*Id.*)

involuntariness because the effects of the defendant's withdrawal— "chills, shaking, and trembling"— did not overcome his ability to think rationally).

Judge Markovich found that Limon was in withdrawal from illegal drugs, or "dopesick." (Doc. 60 at 19.) Judge Markovich further concluded that, despite any discomfort from that condition, Limon's statements were the product of rational intellect and free will. Judge Markovich found that, unlike the defendant in *Kelley*, Limon "never manifested physical symptoms of withdrawal, other than being tired." (*Id.* at 20.) Additionally, Limon did not express confusion, stated he understood his rights, agreed to continue with the interview, and demonstrated his ability to think rationally by (1) denying the bags belonged to him, (2) asserting that an unknown male gave him the bags and told him not to look inside, and (3) refusing to consent to a search of the red phone. (*Id.* at 20–21.) As Judge Markovich explained, the first of these two statements demonstrate that Limon was thinking rationally because he provided exculpatory information to Detective Verdugo. (*Id.*) The third statement shows Limon was thinking rationally because he refused to consent to a search. (*Id.*) Because the facts show that Limon's relatively minor withdrawal symptoms did not overcome his ability to think rationally and exercise his free will, the Court also concludes that Limon statements were voluntary.[3]

*B. Limon's statements were not coerced by law enforcement.*

The Court finds no evidence to support Limon's assertion that he was coerced by officers into making a statement. Limon contends that the interrogation tactics employed by Detective Verdugo constitute coercive police activity, rendering Limon's statements involuntary. (Doc. 66 at 3-4.) In support of this contention, Limon asserts that the agents held him for multiple hours, poked him to wake him up, asked him questions in "rapid succession," and accused him of possessing the bag in question all while he was under the influence of drugs. (*Id.*)

---

[3] Limon does not specifically challenge Magistrate Judge Markovich's conclusion that Limon knowingly and voluntarily waived his *Miranda* rights. (*See* Doc. 60 at 19-20.) Even if Limon intended to challenge this conclusion, the Court agrees with Judge Markovich's well-reasoned conclusion that the facts show Limon's waiver was knowingly, intelligently and voluntarily made.

A statement is involuntary where the government uses coercive tactics to undermine the defendant's ability to exercise his free will. *Henry v. Kernan*, 197 F.3d 1021, 1026 (9th Cir. 1999). The coercive tactics must have caused the defendant to make the statements. *United States v. Turner*, 926 F.2d 883, 888 (9th Cir. 1991). Examples of such tactics include prolonged isolation, deprivation of food or sleep, lengthy interrogations, physical abuse, and threats of violence. *See Colorado v. Connelly*, 479 U.S. 157, 163 n.1 (1986). However, the absence or presence of any of these tactics is not dispositive, as the crucial inquiry remains whether the interrogation tactics and the surrounding circumstances prevented the suspect from thinking rationally and exercising free will. *United States v. Preston*, 751 F.3d 1008, 1016 (9th Cir. 2014).

Limon asserts that Border Patrol held him for "multiple hours before the questioning" from 4:00 p.m. to 8:30 p.m. (Doc. 66 at 3.) However, the record reveals that Border Patrol detained Limon for no longer than two hours, as the initial stop did not occur until 6:25 p.m., (Doc. 60 at 4), and Detective Verdugo began questioning Limon around 8:30 p.m., (*Id*. at 8). This is significantly less than the length of detention in cases where the defendant's statements were found to be involuntary. *See, e.g.*, *Reck v. Pate*, 367 U.S. 433 (1961) (holding that the defendant's statements were involuntary where he was held for four days without adequate food and medical attention).

Limon next argues that Detective Verdugo "may have" poked Limon to wake him up prior to the interrogation (Doc. 66 at 3). This claim is unsubstantiated. (Doc. 60 at 16.)[4] Nevertheless, a mere poke would not rise to the level of coercion that may render a statement involuntary. Moreover, there is no indication that the alleged poke at the outset of the interrogation coerced Limon into making his later statements.

Limon also asserts that Detective Verdugo "badgered" him with questions in "rapid succession." (Doc. 66 at 3.) The Court has reviewed the recording of the interrogation and finds no evidence that Detective Verdugo's manner of questioning rose to the level of coercion. While Detective Verdugo did occasionally repeat or rephrase questions (Doc. 60

---

[4] Limon did not testify, and Detective Verdugo did not recall if he poked at Limon to wake him up. (Doc. 60 at 16.)

- 5 -

at 20), the method of questioning was entirely appropriate. *See Solorzano-Garcia v. Covello*, No. 8:22-00945, 2023 WL 4291667, at *17 (C.D. Cal. June 16, 2023) ("Nor do accusations of lying and repeated questioning constitute coercive behavior."). Indeed, Detective Verdugo appeared to repeat and rephrase questions in an attempt to clarify Limon's soft-spoken answers.

Finally, Limon contends that Detective Verdugo engaged in coercive conduct when he asserted that the police knew Limon possessed the bag in question, thereby rendering his subsequent statements involuntary. Such an accusation fails to rise to the level of police coercion. *Id.* at *17 ("Nor do accusations of lying and repeated questioning constitute coercive behavior."). Moreover, in response to Detective Verdugo's representation that "we know you did it," Limon stated that "he was not aware of what was in the bag and was told not to look in it." (Doc. 60 at 14.) Limon's response demonstrates his ability to think rationally because his claimed ignorance, if true, would exonerate him of the charges. Thus, the Court agrees with Judge Markovich's conclusion that Detective Verdugo's statement was not coercive and did not prevent Limon from thinking rationally and exercising free will.

C. *The Magistrate Judge applied the correct standard.*

In his Objection, Limon asserts that the Magistrate Judge relied solely on Limon's ability to answer questions without considering the totality of the circumstances. (Doc. 66 at 2.) Limon's contention that the Magistrate Judge did not apply the correct standard in determining whether his statements were voluntary lacks merit.

In determining whether statements are voluntary, the Court must consider the totality of the circumstances, including the "characteristics of the accused and the details of the interrogation." *United States v. Kelley*, 953 F.2d 562, 564-65 (9th Cir. 1992). Judge Markovich repeatedly acknowledged in the R&R that the appropriate standard to apply was "totality of the circumstances." (*See* Doc. 60 at 1, 17.) Judge Markovich evaluated the characteristics of the accused as well as the details of the interrogation in determining whether Limon's statements were voluntary. He considered what occurred prior to and during Limon's interview with law enforcement, (Doc. 66 at 1), Limon's state of

exhaustion due to withdrawal and the fact that Detective Verdugo had to rephrase his questions and repeat Limon's answers. (Doc. 60 at 20.) Judge Markovich noted that these facts "cut against the defendant's statements being voluntary," but explained that the analysis does not end there. (*Id.* at 19.) Judge Markovich ultimately concluded that the evidence demonstrating Limon's ability to think rationally and exercise free will, such as Limon's relatively minor withdrawal symptoms and ability to provide exculpatory information, outweighed evidence to the contrary. (*Id.* at 20–22.) Judge Markovich's careful weighing of all the evidence demonstrates that he applied the correct legal standard and considered the totality of the circumstances. Accordingly,

**IT IS HEREBY ORDERED:**

1. Defendant's Objection to Report and Recommendation (Doc. 66) is **overruled**.
2. Magistrate Judge Eric J. Markovich's Report and Recommendation (Doc. 60) is **accepted** and **adopted**.
3. Defendant's Motion to Suppress Statements (Doc. 37) is **denied**.

Dated this 20th day of March, 2024.

Jennifer G. Zipps
United States District Judge